**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

August 14, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Brian N. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-3159-DRM

Dear Counsel:

On September 23, 2025, Plaintiff Brian N. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 15, 20 and 21). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 5, 2014, initially alleging a disability onset of January 1, 2009, later amended to February 2, 2012. Tr. 150, 371, 376, 3348. Plaintiff's claims were denied initially and on reconsideration. Tr. 175, 193. Plaintiff subsequently had three hearings, each before an Administrative Law Judge ("ALJ"). Tr. 29-54, 56-90, 2454-2493. After each hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, during the relevant time frame. Tr. 12-27, 147-170, 2418-2450. Plaintiff appealed each unfavorable decision, and each decision was remanded back to the agency, either by the Appeals Council or by this Court. Tr. 171-174; Order, *Brian N. v. Saul*, No. JMC-20-03457 (D. Md. Sept. 15, 2021), Dkt. No. 15 (granting Commissioner's consent motion to remand); Order, *Brian N. v. Kijakazi*, No. JRR-23-02201 (D. Md. April 8, 2024), Dkt. No. 16 (granting Commissioner's consent motion to remand).

Following the most recent remand, an ALJ held two further hearings on November 14, 2024, and June 17, 2025. Tr. 3387-3401; 3402-3428. Following the hearings, on July 23, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, during the relevant time frame. Tr. 3345-3386. The ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "has not engaged in substantial gainful activity since February 2, 2012, the amended alleged onset date." Tr. 3351. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "[a] mental [impairment] variously diagnosed as a learning disorder, attention deficit hyperactivity disorder (ADHD), a depressive disorder, attention deficit disorder (ADD), alcohol and drug abuse disorder, anxiety disorder, personality disorder, bipolar disorder, schizophrenia, and a psychotic disorder; pancreatitis and residual effects from a Frey procedure; choledocholithiasis; common bile duct dilatation; bilateral Morton's neuroma, pes planus, right plantar fibroma, and right plantar fasciitis; diabetes mellitus; ventral hernia; gastroesophageal reflux disease; lumbosacral spondylosis; and chronic pain syndrome." Tr. 3351. The ALJ also determined that Plaintiff suffered from the following non-severe medically determinable impairments of: "hypertension, vitamin D deficiency, toxic diffuse goiter, onychomycosis, verruca vulgaris of the right inferior vermillion lip, bronchitis, fracture in the right hand, hyperglyceridemia, dehydration, sacral cyst, erectile dysfunction, tinea pedis, infection of the upper respiratory tract, tinea corporis, and hyperlipidemia." Tr. 3351.

At step three, the ALJ determined that "[e]ven with the claimant's substance use, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 3351. The ALJ also determined that "from the amended alleged onset date, February 2, 2012, through the date last insured, September 30, 2012, and continuing through March 10, 2013," Plaintiff retained the residual functional capacity ("RFC") to perform:

> the full range of all physical work, up to and including very heavy work, work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to performing simple 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 3359. The ALJ further determined that "[f]rom March 11, 2023 through March 10, 2020, the undersigned finds that, based on all of the impairments, including the substance use disorder," Plaintiff retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards (machinery, heights, etc.); and required the ability to alternate between sitting and standing about every 30 minutes. Additionally, the claimant could perform simple 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line. The claimant would also have required the ability to be off task more than 9 percent of an 8-hour workday and to miss more than 1 day of work per month or more than 12 days per year.

Tr. 3361. The ALJ also evaluated Plaintiff's abilities in relation to substance use and determined that if Plaintiff had "stopped the substance use for the period from March 11, 2013 through March 10, 2020," Plaintiff would have retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards (machinery, heights, etc.); and required the ability to alternate between sitting and standing about every 30 minutes. Additionally, the claimant could perform simple 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 3365. Finally, the ALJ analyzed the later period under consideration and determined that, "[f]rom March 10, 2020 through the date of the present decision," Plaintiff retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards (machinery, heights, etc.); and required the ability to alternate between sitting and standing about every 30 minutes. Additionally, the claimant could perform simple

> 1-4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 3366. At steps four and five, the ALJ determined that Plaintiff had no past relevant work, and further that "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed from March 11, 2023 and March 10, 2020." Tr. 3370. However, the ALJ also determined that "[i]f the claimant stopped the substance use in the period from March 11, 2013, through March 10, 2020," there would have been "jobs that exist in significant numbers in the national economy that the claimant can perform," additionally "[t]here would also be a significant number of jobs in the national economy that the claimant could perform from February 2, 2012 through March 10, 2013 and from March 11, 2020 through the date of this decision regardless of his substance abuse," such as price marker, grader / sorter, and textile worker. Tr. 3371-3372. Therefore, the ALJ concluded that Plaintiff was not disabled "from February 2, 2012 through March 10, 2013" nor "from March 11, 2020, through the date of this decision." Tr. 3372-3373.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to define a restriction included in the hypothetical to the vocational expert ("VE"), on which the VE later improperly relied, and then formulated an RFC with the same restriction. ECF No. 15 at 11-16. Specifically, in hypothetical four to the VE, the ALJ posited an individual with a job that does "not require *a fast pace or production quotas, such as would customarily be found on an assembly line*. This individual can understand, remember, and carry out simple instructions, can perform work without *a specific production rate pace, such as assembly line work or work with hourly production quotas*…." ECF

No. 15 at 11; Tr. 3413 (emphasis added). All four RFCs include a restriction that Plaintiff can perform tasks "which would not require a fast pace or production quotas such as would customarily be found on an assembly line." *Id.*; Tr. 3359, 3361, 3365, 3366.[1] Plaintiff argues that the ALJ failed to define the restriction, which is also not defined by regulation; that an industry specific example does not clarify the restriction; and that the error is not harmless because the ALJ relied on the VE's testimony, based on the inadequate hypothetical, to conclude that Plaintiff is not disabled. ECF No. 15 at 11-16.

In response, the Commissioner argues that the ALJ "separately addressed three distinct time periods … meticulously addressed Plaintiff's physical and mental conditions within each time period while controlling for the effects of his substance abuse. And he did so across 26 pages of single-spaced text. His decision was not only adequate, but exemplary." ECF No. 20 at 13. The Commissioner adds that the cases cited by Plaintiff are distinguishable. *Id.* at 14. He contends that the ALJ did "specify what he meant by a 'non-production pace,' namely, disallowing work with a 'fast pace or production quotas such as would customarily be found on an assembly line.'" *Id.* at 15. He argues the ALJ used "common, concrete terms and even includes a clear example—'as would customarily be found on an assembly line.'" *Id.* The Commissioner notes that district courts have affirmed "when an ALJ uses concrete language like that used here and draws from expert findings contained in the record." *Id.* at 16 (citing *Autumn C. v. Bisignano*, No. EA-25-1592, 2026 WL 1072758, at *6-7 (D. Md. April 20, 2026)). Finally, he points out that neither the VE nor Plaintiff's counsel expressed confusion or raised questions about the terminology during the hearing. *Id.* at 17.

In reply, Plaintiff argues that "[t]he Commissioner repeatedly emphasizes the length and asserted detail of the ALJ's decision and the medical evidence supporting the need for a pace-related restriction. Neither point resolves the dispositive issue because the ALJ did not adequately define the scope of work permitted by his limitation." ECF No. 21 at 1-2. Plaintiff adds that "[t]he Commissioner's reliance on the overall length or detail of the decision is therefore misplaced" because "[a] lengthy discussion of Plaintiff's impairments and the opinion evidence does not make an otherwise indefinite vocational restriction more precise." *Id.* at 3. Plaintiff contends that the VE's "failure to express confusion does not establish that the hypothetical was adequate" because it "shows only that the expert answered the question. It does not disclose what meaning the expert assigned to the undefined terminology or whether that meaning corresponded to the ALJ's intent." *Id.* at 4.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the]

[1] The RFCs do not include the second formulation in the hypothetical posed to the VE, i.e. "work without a specific production rate pace, such as assembly line work or work with hourly production quotas." Tr. 3413.

RFC is supported by substantial evidence." *Id.* Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id.* at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD-20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[2]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-

---

[2] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* Nearly-identical language appears in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), Appendix C – Physical Demands: "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." However, no definition is given of "production rate pace" in either volume, and the term's use in this narrow context does not elucidate a general meaning.

5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Some cases have affirmed RFC language or VE hypotheticals in which ALJs have elaborated on "production rate pace," or similar terms, with additional descriptors or examples. *Briana H. v. O'Malley*, No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (affirming where "here, unlike in *Thomas*, the ALJ defined 'production rate' in the hypothetical question to the VE explaining that the 'no production rate requirement' meant 'assembly line work.'"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (affirming where RFC excluded "fast-paced production work" and ALJ stated to VE "[a]nd they could not perform work that would require fast-productivity goals, like — like assembly-line work."). *See also Melissa J. v. Kijakazi*, No. 22-1003-BAH, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases which "have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.")

However, the Fourth Circuit subsequently held in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). The Court finds the reasoning of *Linger* persuasive[3] in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas*, 916 F.3d at 312, or "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, and it is questionable whether the outcomes of *Briana H.*, *Jackie W.*, or *Melissa J.* could be the same following this elucidation.

In this case, the second formulation used in the VE hypotheticals, "a specific production rate pace, such as assembly line work or work with hourly production quotas," Tr. 3413, is very similar to language which this Court has remanded in several recent cases, often relying on the above clarification in *Linger*. *See, e.g., Jasmine M. v. Bisignano*, No. JMC-25-3291, 2026 WL 2035198, at *2 (D. Md. July 14, 2026) ("work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas"); *Nicka D. v. Bisignano*, No. DRM-25-3053, 2026 WL 1855652, at *2 (D. Md. June 27, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Mark M. v. Bisignano*, No. EA-24-3738, 2026 WL 739424, at *7 (D. Md. Mar. 16, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Jason M. v. Bisignano*, No. DRM-25-

[3] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas"). *But see Autumn C.*, 2026 WL 2042105 (distinguishing *Linger* and holding that "the phrasing employed here—that Plaintiff could 'perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas'—contains commonly understood terms and examples that collectively provide sufficient explanation for appellate review.")

The Court finds that the formulation "a specific production rate pace," Tr. 3413, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. The Court further finds that the examples given: "assembly line work or work with hourly production quotas," Tr. 3413, fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas" failed in *Linger*. The mere inclusion of illustrative examples does not sufficiently define or explain the scope of the restriction. It is therefore difficult for the Court to ascertain whether it was possible for the VE to know whether a person limited to work not involving "a specific production rate pace" could perform the job functions of price marker, grader / sorter, and textile worker. The Court thus cannot determine whether the ALJ's step-five finding was supported by substantial evidence.

The first formulation in the VE hypothetical, which also appears in the RFCs, is phrased somewhat differently: "a fast pace or production quotas such as would customarily be found on an assembly line." Tr. 3413 (hypothetical four); Tr. 3359, 3361, 3365, 3366 (RFCs). To the extent the difference is meaningful, the Court notes that it has also recently remanded an ALJ decision involving this exact language. *Kacy W. v. Bisignano*, No. TJS-25-1465, 2026 WL 2035417 (D. Md. July 14, 2026):

> The Court finds *Linger*'s reasoning persuasive. In this case, the ALJ made the same error that the Fourth Circuit found in *Linger*, *Thomas*, and *Perry*. The ALJ's finding that the claimant can perform jobs available in the national economy is based on the VE's testimony that a hypothetical individual with the claimant's limitations, including a limitation to work that does "not require *a fast pace or production quotas such as would customarily be found on an assembly line*," would be able to perform certain identified jobs. Because the terms that the ALJ used in defining the claimant's limitations were not adequately defined, the Court is unable to find that the ALJ's RFC determination and step-five finding are based on substantial evidence.

*Kacy W.*, 2026 WL 2035417, at *3 (D. Md. July 14, 2026) (emphasis added). Once again, the Court finds that this formulation, when used in the VE hypothetical, precludes the Court from determining whether substantial evidence supported the step-five determination that Plaintiff could perform the identified occupations. This formulation also appears in all four RFCs, and the Court therefore finds the restriction in each RFC insufficiently defined to permit judicial review.

In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge